**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal Case No. 1:25-cr-00383-LLA** |
| | **:** | |
| **DANIELLE HILLMER** | **:** | |

**REPLY IN SUPPORT OF DANIELLE HILLMER'S MOTION TO COMPEL
PRODUCTION AND IDENTIFICATION OF
_BRADY_ AND _GIGLIO_ MATERIAL**

Danielle Hillmer, by and through undersigned counsel, respectfully submits this reply in support of her Motion to Compel Production and Identification of _Brady_ and _Giglio_ Material (ECF No. 32, "Motion" or "Mot.") and in response to the government's Memorandum of Law in Opposition to Defendant's Motion to Compel Production and Identification of _Brady_ and _Giglio_ Material (ECF No. 35, "Opposition" or "Opp.").

**PRELIMINARY STATEMENT**

The government's Opposition rests on the premise that it is not ordinarily required to direct the defense to exculpatory or impeachment evidence within a larger production. But that principle does not apply where, as here, the scale, structure, and defects in the government's disclosures obscure known favorable evidence. By casting its production of nearly seventeen million pages of discovery and its "good-faith" efforts as sufficient to satisfy its constitutional obligations under _Brady v. Maryland_, 373 U.S. 83 (1963), and _Giglio v. United States_, 405 U.S. 150 (1972), the government misses the central problem: its massive disclosures have the practical effect of impeding Ms. Hillmer's ability to review and identify exculpatory and impeachment material, while leaving specific favorable evidence presented to the grand jury as yet unproduced. Both affirmative identification of documents **known** by the government to be covered by _Brady_ and

*Giglio* and further disclosure of grand jury material are therefore required to ensure that Ms. Hillmer can identify and meaningfully evaluate favorable evidence within the record.

## ARGUMENT

### I. THE LAW REQUIRES THE GOVERNMENT TO IDENTIFY KNOWN *BRADY* AND *GIGLIO* MATERIAL

All of the factors courts consider in assessing whether the government must identify known *Brady* and *Giglio* material weigh decisively in favor of relief here. The government's massive production, its years-long investigative advantage, and the technical deficiencies in its disclosures seriously impede the defense's ability to identify favorable evidence. And because the government's constitutional obligations turn on whether *Brady* and *Giglio* material has been ***meaningfully disclosed***—not on the government's purported good faith—its claimed efforts to facilitate review do not change that conclusion.

### A. The Volume of the Government's Production Supports Identification.

The volume of the government's production—approximately 17 million pages—underscores the need for affirmative identification of known exculpatory and impeachment material. *Brady* does not permit the government to satisfy its obligations through a production so voluminous that exculpatory evidence is effectively lost within it. *See United States v. Saffarinia*, 424 F. Supp. 3d 46, 85 (D.D.C. 2020); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998). That is the practical result here.

In its Opposition, the government contends that it is "not obliged to sift fastidiously through" its massive production because it produced discovery "in a searchable fashion" and in the form received. Opp. at 5. This Court has already rejected that exact argument. *See Saffarinia*, 424 F. Supp. 3d at 86. Where, as here, the defense "simply asks the government to identify *Brady* material ***already known to it*** based on its existing knowledge of the documents it collected and

2

reviewed in the first instance," the government's constitutional obligations "require it to identify" that material. *Id.* (original emphasis). That is all Ms. Hillmer seeks here. *See* Mot. at 9-10. The government's suggestion that Ms. Hillmer's request amounts to an improper demand for discovery misses the point. Opp. at 5. It is axiomatic that there is no general constitutional right to discovery in a criminal case. *See United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988). But that principle does not apply where, as here, Ms. Hillmer does not seek open-ended access to the government's files. She seeks enforcement only of the government's independent obligation under *Brady* and *Giglio* to disclose known exculpatory and impeachment material. Ms. Hillmer's limited request thus reflects the "basic proposition[] of *Brady* jurisprudence" that "it is the government's responsibility in the first instance to determine whether information in its possession is *Brady* material." *Saffarinia*, 424 F. Supp. 3d at 86 (quoting *Hsia*, 24 F. Supp. 2d at 30).

The government's attempt to sidestep this Court's precedent by asserting that those decisions "were dictated by circumstances not present here" fails. Opp. at 7 (citing *Saffarinia*, 424 F. Supp. 3d at 90-91; *Hsia*, 24 F. Supp. 2d at 14). Although those cases considered many factors when determining whether identification was necessary, both turned on the same principle: the government may not satisfy *Brady* through a production so massive that it renders exculpatory evidence practically inaccessible to the defense. *Saffarinia*, 424 F. Supp. 3d at 85 (citation omitted); *see Hsia*, 24 F. Supp. 2d at 29-30 (rejecting reliance on a massive production that required the defendant "to find [] exculpatory information in the haystack"). The government cannot distinguish those decisions as fact-specific outliers while disregarding the principle that underlies them.

Nor do the government's principal appellate authorities compel a different result. *See* Opp. at 5-7 (citing *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009); *United States v. Warshak*, 631

F.3d 266, 297 (6th Cir. 2010)). *Skilling* does not suggest that the government satisfies *Brady* by producing voluminous discovery without identifying known favorable evidence. To the contrary, the court in *Skilling* recognized that an "unduly onerous" production may raise *Brady* concerns. 554 F.3d at 577; *see also United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (recognizing that an unduly onerous production may raise *Brady* concerns). The government's reliance on *Warshak* is similarly misplaced. This Court has already explained that *Warshak* is "unpersuasive" because it improperly turns on the absence of bad faith—an inquiry that is irrelevant under *Brady*. *See infra* at pp. 9-11; *Saffarinia*, 424 F. Supp. 3d at 90.

In any event, the government's appellate authorities arise in a fundamentally different posture. They largely address post-trial claims through the lens of prejudice after conviction, not the government's pre-trial obligation to make *Brady* information available in time for effective use. As this Court has explained, "[t]he prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005). At this stage, the question is whether the evidence may be favorable to the accused and whether disclosure is meaningful, not whether suppression can later be dismissed as harmless. The Court should therefore require the government to identify all known *Brady* material within its productions rather than permit the extraordinary scale of a 17-million-page production to substitute for constitutional compliance.

## B. The Government's Investigative Advantage Supports Identification.

Beyond the sheer volume of the government's production, the disparity between the government's extensive, years-long investigation and the defense's recent receipt of millions of pages of discovery supports requiring identification of known *Brady* and *Giglio* material. Over the course of its investigation, at least five prosecutors and ten federal agents reviewed, organized,

and assessed complex and technical material on a rolling basis.  By contrast, Ms. Hillmer who—

contrary to the government's characterizations—is not a technical expert "well-positioned to assist

defense counsel in interpreting any technical security documents necessary to prepare a defense,"

Opp. at 12, received the bulk of the discovery only months ago.  That disparity matters.  The

"benefit of several prosecutors and federal agents reviewing the material on a rolling basis over

the course of its years-long investigation" places it in a uniquely advantaged position to identify

favorable evidence.  *United States v. Omidi*, 2021 WL 7629896, at \*2 (C.D. Cal. Sept. 1, 2021);

*United States v. Blankenship*, 2015 WL 3687864, at \*7 (S.D. W. Va. June 12, 2015) (explaining

that the United States "is in a far better position than the Defendant to know what evidence might

be exculpatory and/or impeachment material under *Brady*").[1]

The government's attempt to minimize its investigative advantage by noting that Ms.

Hillmer is not detained pending trial does not eliminate the disparity.  *See* Opp. at 11-12.  Like the

defendants in *Saffarinia* and *United States v. Salyer*, she is a single defendant who only recently

received millions of pages of highly technical material.  *Saffarinia*, 424 F. Supp. 3d at 88; *see also*

*United States v. Salyer*, 2010 WL 3036444, at \*7 (E.D. Cal. Aug. 2, 2010).  Even assuming some

relevant background knowledge, Ms. Hillmer cannot replicate the government's years-long review

or independently sift through a massive and complex record to identify potentially exculpatory and

impeachment evidence.

---

[1] The government cannot avoid its obligation to identify and disclose known *Brady* and *Giglio* material by relying on the fact that current prosecutors were not involved in earlier stages of the investigation.  That obligation applies to the government as an institution, which is charged with knowledge of information known to those acting on its behalf.  *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf. . . .").

The resources of defense counsel likewise do not alter the analysis.  *See* Opp. at 11-12.  Neither case on which the government relies holds that identification is unnecessary where the defense is well-resourced.  To the contrary, both *Saffarinia* and *Salyer* treat defense capacity as just one factor among many in ensuring meaningful disclosure in the face of voluminous discovery.  *See Saffarinia*, 424 F. Supp. 3d at 88; *Salyer*, 2010 WL 3036444, at \*7.  They do not make the government's obligations contingent on the size, sophistication, or staffing of the defense, let alone the size of the defense's **law firm**.  *See* Opp. at 12 n. 3 (government claiming that the fact defense counsel's law firm is a "multinational" firm).

That is for good reason.  The duty to identify and disclose favorable evidence rests with the government "in the first instance," regardless of the defense's ability to exercise diligence.  *Salyer*, 2010 WL 3036444, at \*5 n.6.  Allowing the government to rely on defense counsel's resources to "excuse [the government's] failure" to disclose would impermissibly "flip [its] obligation."  *Amado v. Gonzalez*, 758 F.3d 1119, 1136 (9th Cir. 2014); *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 290 (3d Cir. 2016) ("[T]he duty to disclose under *Brady* is absolute—it does not depend on defense counsel's actions."); *Salyer*, 2010 WL 3036444, at \*5 ("[T]he Supreme Court has placed the initial *Brady/Giglio* duty on the government, and the undersigned is not free to assign it to [the defendant].").  The same concern arises here.

Even on its own terms, the government's argument fails.  No plausible configuration of defense resources can replicate the government's years-long review of millions of documents or its resulting knowledge of where exculpatory material resides within its files.  That is especially true given the highly technical subject matter, where the significance of individual documents depends on context and their relation to other materials.  The cases the government cites underscore that point.  Where courts declined to require identification, they relied on materially different

6

circumstances—such as years of parallel civil discovery—that mitigated the informational gap. *See Salyer*, 2010 WL 3036444, at *6 (referencing case where government was not required to identify *Brady* material after considering, among other circumstances, that "a civil litigation had been ongoing for years"); *United States v. AU Optronics Corp.*, 2011 WL 6778520, at *2 (N.D. Cal. Dec. 23, 2011) (explaining that the government was not required to identify *Brady* material in its production only after noting that "most importantly," defendants "ha[d] the benefit of years of participation in the civil cases"). Those conditions are not present here. The government cannot avoid identifying *Brady* material by pointing to the defense's ability to attempt, under significant time and informational constraints, to replicate what the government already knows.

**C.      Defects in the Government's Production Independently Support Identification.**

The highly technical nature of this case, when combined with the serious defects in the government's production, independently supports identification of *Brady* and *Giglio* material. The government's production contains fundamental metadata deficiencies that hinder the defense's ability to contextualize and meaningfully review what is already a technical and voluminous record, including missing hash values, incomplete or inaccurate date fields, and broken document-family links. To date, the defense has identified tens of thousands of documents that suffer from one or more of these defects. Where, as here, technical deficiencies seriously affect meaningful evaluation of the production, disclosure alone is insufficient. *See, e.g.*, *United States v. Cutting*, 2017 WL 132403, at *10 (N.D. Cal. Jan. 12, 2017); *Omidi*, 2021 WL 7629896, at *2.

The government's claim that these issues should be disregarded because the defense did not raise technical concerns earlier, Opp. at 13, is wrong twice over.

***First***, the defense has, in fact, identified such problems. In connection with Ms. Hillmer's motion for a bill of particulars, defense counsel informed the government that "22 hours of audio

7

recordings produced by the 3PAO, Coalfire lack metadata indicating the date of the recording," thus preventing Ms. Hillmer from "ascertain[ing] whether these recordings—or some other documents within the government's voluminous productions—reflect the oral statements that are the subject of the indictment." ECF No. 23 at 9 n.3. That is not a minor defect; it directly affects the defense's ability to evaluate and use potentially exculpatory or impeachment evidence and reflects the same type of recurring metadata deficiencies present throughout the government's production.

*Second*, the government identifies no rule—because none exists—requiring the defense to identify and catalogue deficiencies in a massive production on any particular timeline or in any prescribed manner. Nor does ongoing communication with the government impose an obligation on the defense or excuse deficiencies in the production. In any event, the nature of these deficiencies and the volume of production have made earlier identification impossible. The defense has been diligently reviewing the discovery produced, but given the volume and complexity of the material, the full extent of the metadata deficiencies could not be identified at the outset. Those issues emerge only through close, document-by-document review. This motion therefore represents the first reasonably practicable opportunity to present the defects identified to date.[2]

Contrary to the government's assertions, the deficiencies here are not immaterial. *See* Opp. at 14. They impair the defense's ability to perform basic analytical tasks necessary to identify favorable evidence, such as determining when documents were created, linking communications

---

[2] Ms. Hillmer will, of course, continue to engage with the government in good faith to address technical deficiencies in production. However, with trial rapidly approaching, those deficiencies provide an additional basis for granting the relief she seeks—namely, the identification and disclosure of known *Brady* information.

to their attachments, and avoiding duplicative review.  In a case where a document's relevance turns on timing, authorship, and technical context, these deficiencies do more than slow review— they materially undermine Ms. Hillmer's ability to determine whether evidence is exculpatory or useful for impeachment.

For the same reason, the government's attempt to distinguish cases in which courts have ordered identification due to technical problems misses the point.  *See* Opp. at 14.  The inquiry is not whether the deficiencies here mirror those in prior cases, but rather whether they meaningfully impair the defense's ability to locate and use favorable evidence in this case.  *See Cutting*, 2017 WL 132403, at *10.  Here, they plainly do.  The combination of massive volume, technical subject matter, and defective metadata "seriously impede[s]" and makes it "difficult[]" to conduct meaningful review, warranting identification of *Brady* and *Giglio* material.  *See, e.g.*, *id.* (ordering identification where electronic discovery "seriously impede[d]" meaningful review); *Omidi*, 2021 WL 7629896, at *2 (ordering identification where defense counsel cited "difficulties searching the Government's electronic discovery").

### D. The Government's "Good Faith" Efforts Do Not Satisfy Its Constitutional Obligations.

The government frames *Brady* as a question of intent, relying on *Skilling* to assert that its "good-faith efforts" to facilitate defense counsel's review of the massive discovery production should end the inquiry.  Opp. at 8-11.  That is wrong.  As this Court has held, *Skilling*'s focus on the government's intent as a factor in determining whether the government's constitutional obligations have been satisfied is "unpersuasive" and "inconsistent with guidance from the Supreme Court and the D.C. Circuit." *Saffarinia*, 424 F. Supp. 3d at 89-90.  The relevant inquiry instead turns on whether favorable evidence has been disclosed, not on the government's good faith.  *Id*.  Indeed, "if there is a non-disclosure occasioned by the massiveness of the document

9

production to which the defense is given access, it should make no difference whether such was accompanied by good or bad faith—a non-disclosure is a non-disclosure[.]" *Id.* at 90 (quoting *Salyer*, 2010 WL 3036444, at \*7); *Brady*, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *accord United States v. Pasha*, 797 F.3d 1122, 1141 (D.C. Cir. 2015). What matters therefore is not the government's intent, but rather whether known *Brady* and *Giglio* material has been meaningfully disclosed in a manner that permits its effective discovery. Here, it has not.

Nor can the government satisfy its constitutional obligations by pointing to "steps" it has taken to assist Ms. Hillmer in reviewing the 17-million page production. Opp. at 10. To qualify, any such steps must actually enable the defense to locate exculpatory or impeachment evidence—not merely describe the production or reflect the government's own theory of the case. The government's reliance on pre-indictment disclosures is therefore misplaced. Pre-indictment conduct cannot satisfy post-indictment constitutional obligations, particularly where, as here, the government's theory materially changed over time. For example, undersigned counsel did not become aware of NIFMS—the centerpiece of the government's major fraud theory—until approximately one month before the grand jury returned the indictment. *See* ECF No. 23 at 6-7.

Even considering the government's post-indictment disclosures, the "steps" it has taken to assist the defense fall far short. Its discovery indices, which supposedly "identify the nature and source" of materials, Opp. at 8, are so broad as to be functionally useless, placing approximately 87% of the government's production (14 million pages) into the same descriptive category. *See* Mot. at 4. The government's generalized discovery letters and limited disclosure of documents similarly do not identify exculpatory or impeachment evidence; at most, they highlight material

the government considers relevant *to its own case*.  But *Brady* requires disclosure of *exculpatory* evidence, not guidance toward *inculpatory* proof.  *See, e.g., Saffarinia*, 424 F. Supp. 3d at 89 (underscoring that providing "hot documents" used during a reverse proffer session that help the government's case do not qualify as an "additional step").  When Ms. Hillmer sought identification of discrete categories of material that would point to exculpatory evidence, the government declined, asserting that such requests "far exceed[]" its *Brady* obligations.  *See* Ex. H, Government's Mar. 16, 2026 Letter; Ex. J at 2, Government's Apr. 10, 2026 Letter; *see also* Ex. I, Hillmer's Mar. 31, 2026 Letter.  The relevant question is not whether known exculpatory information may be somewhere within the government's voluminous productions, but whether the government's actions enable the defense to identify and use that information.  Where the government knows of exculpatory material, its disclosures must meaningfully lead the defense to it.  *Saffarinia*, 424 F. Supp. 3d at 89 (rejecting sufficient "additional steps" where "the government has never suggested" the hot documents it provided "contain[] all the material, exculpatory information within the government's files").

## II.    Ms. Hillmer Has Shown a Particularized Need for Grand Jury *Brady* and *Giglio* Material, or Alternatively, for *In Camera* Review of Grand Jury Testimony

Ms. Hillmer satisfies all requirements to warrant disclosure of grand jury material covered by *Brady* and *Giglio*.  *See United States v. Sutton*, 2023 WL 5827718, at *13 (D.D.C. Sept. 8, 2023) (explaining that "[t]he 'particularized need' standard requires a showing that" the disclosure is necessary to avoid injustice, the need for disclosure outweighs continued secrecy, and the request is narrowly tailored).  The record establishes that the grand jury proceedings contain material exculpatory and impeachment evidence and that the government's disclosures remain incomplete, while any remaining interest in secrecy is both minimal and fully addressable through *in camera*

review.   Under these circumstances, the absence of disclosure or review creates a risk that constitutionally required evidence will not be made available to the defense.

### A.     The Disclosure Requested Is Necessary to Avoid Injustice and Is Narrowly Tailored.

Ms. Hillmer has shown that the requested disclosure is both necessary to avoid injustice and narrowly tailored.   The government's own productions confirm that the grand jury record contains material exculpatory and impeachment evidence, providing a concrete basis to conclude that additional undisclosed material is likely to contain similar *Brady* and *Giglio* information.   And the government's failure to produce known *Giglio* grand jury material— ████████████ ████████████████████████████████████████████████████ ████████ —independently confirms that its disclosures are incomplete and do not satisfy its constitutional obligations.   *See* Mot., Ex. P at 2, 7-8.

For the first time, and after months of the defense's repeated requests, the government represents that ████████████████████████████████████████████ ████████████████████████████████████.   Opp. at 16.   It nevertheless insists that it has no obligation to disclose those materials because any belief that they contain *Brady* information is "speculative."   *Id.*   Furthermore, the government repeatedly characterizes the produced grand jury transcripts as merely "early *Jencks*" disclosures, even though those transcripts contain substantial exculpatory and impeachment information bearing directly on the central issues in this case. Opp. at 2, 8; *see* Mot. at 15-17.   The government's position that favorable evidence within these transcripts does not constitute *Brady* or *Giglio* material reflects an impermissibly narrow view of its obligations.   Where the government adopts so constrained a framework at the threshold, the Court should not defer to its unilateral determinations.   And, because the government's own selected disclosures show that the grand jury testimony is littered with *Brady*

12

and *Giglio* material, it is not conjectural to conclude that other testimony taken before the grand jury on the same subject matter is likely to contain similar exculpatory information. *See United States v. Naegele*, 474 F. Supp. 2d 9, 10-11 (D.D.C. 2007) (finding particularized need based on evidence from already-disclosed grand jury documents).

In any event, the record independently confirms that the government's disclosures are incomplete. The government has not produced ███████████████████████████████ ██████████████, which is paradigmatic *Giglio* material. *See* Mot., Ex. P at 2. Because the government has represented that it expects ██████████ to testify at trial, Opp. at 16, any inducement or benefit bearing on his credibility must be disclosed. *See Giglio*, 405 U.S. at 154-55 (nondisclosure of grant of immunity to witness violates due process). The absence of such impeachment evidence from the government's productions, without any contention that it falls outside *Giglio*, is concrete evidence that the government's disclosures have not yet satisfied its constitutional obligations.

Furthermore, Ms. Hillmer does not seek "unfettered access to all grand jury materials." Opp. at 17. She seeks only what the Constitution requires: disclosure of *Brady* and *Giglio* material. The government's reliance on cases addressing Rule 16 of the Federal Rules of Criminal Procedure or Jencks Act disclosures are therefore irrelevant—this is not a Rule 16 or Jencks request but rather a request to enforce the government's constitutional obligations under *Brady* and *Giglio*. *See* Opp. at 16; *United States v. Sitzmann*, 74 F. Supp. 3d 128, 140 (D.D.C. 2014) (considering disclosure under *Brady* and *Giglio* separately from disclosure under the Jencks Act or Rule 16).

The government's fallback assertion that it "will produce [] materials at an appropriate time," Opp. at 17, does not cure the defect. A generalized assurance of future compliance is no substitute for present adherence to constitutional obligations. *See Saffarinia*, 424 F. Supp. 3d at

13

86-87.  On this record, where the government's own disclosures establish the presence of exculpatory or impeachment evidence and its production remains incomplete, the Court should not rely on those assurances.

**B.      Any Remaining Interest in Secrecy Does Not Justify Withholding Disclosure.**

The government identifies no specific, continuing secrecy interest sufficient to justify non-disclosure.  *See generally* Opp. at 15-17.  Its own representation that ███████████ ██████████████████████████████████████████████████████████████████ confirms that any secrecy interest is limited and readily addressed through the already-entered protective orders.

Any reliance on secrecy is further undermined by the government's invocation, as recently as during the hearing on Ms. Hillmer's motion for a bill of particulars, of an ongoing grand jury investigation as a basis to resist disclosure.  *See also* Jan. 21, 2026 Hr'g Tr. at 3:12-13 ("The government has an ongoing investigation related to the entity that the defendant was previously employed by.").  That assertion is difficult to reconcile with the government's new representation that ███████████████████████████████████████████████████ ████████████████████████████████████████.[3]  Opp. at 16.  The tension between those representations undermines any claim that secrecy meaningfully justifies withholding review.  At a minimum, it confirms that the Court should not rely solely on the government's characterization of the record and should instead conduct *in camera* review of the remaining grand jury materials to ensure compliance with *Brady* and *Giglio*.

---

[3] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

## CONCLUSION

For the foregoing reasons, Ms. Hillmer respectfully requests that the Court grant her Motion to Compel Production and Identification of *Brady* and *Giglio* Material, and (1) order the government to identify all known exculpatory and impeachment material contained within its discovery productions, and (2) order immediate production of grand jury material containing exculpatory and impeachment information.

Dated: June 2, 2026

Respectfully submitted,

*/s/ Charles F. Connolly*
Charles F. Connolly, D.C. Bar No. 455969
Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
Natalia Heguaburo, D.C. Bar No. 90017877
  (*admission application pending*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com
nheguaburo@akingump.com

*Counsel for Danielle Hillmer*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on June 2, 2026, a copy of the foregoing document was served upon all counsel of record through the Court's ECF system and, on June 2, 2026, an unsealed and unredacted copy of the foregoing document was served upon all counsel of record, with their consent, by electronic mail.  *See* Fed. R. Crim. P. 49(a)(3)(B), (b)(3)(A); Standing Order No. 25-49 ¶ 3 (D.D.C. Sept. 22, 2025) (Boasberg, C.J.).

*/s/ Charles F. Connolly*
Charles F. Connolly, D.C. Bar No. 455969
Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
Natalia Heguaburo, D.C. Bar No. 90017877
  (*admission application pending*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com
nheguaburo@akingump.com

*Counsel for Danielle Hillmer*