**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
| --- | --- |
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIELLE HILLMER,<br><br>        *Defendant*. | Criminal Action No. 25 - 383 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Defendant Danielle Hillmer is charged by indictment with two counts of wire fraud, one count of major fraud, and two counts of obstruction of a federal audit, all in connection with an alleged scheme to fraudulently obtain federal authorizations for Ms. Hillmer's company's cloud service product.  ECF No. 1 ¶¶ 44-53.  Ms. Hillmer has filed a motion for a bill of particulars. ECF No. 18.  For the following reasons, the court denies the motion.

## I.    FACTUAL BACKGROUND

Ms. Hillmer was a senior manager at Company A, a government contractor that provides cloud computing services to federal government agencies.  ECF No. 1 ¶¶ 1-2.  From around 2017 to 2022, Company A sold a service that it marketed as a secure, cloud-based platform for federal agencies (the "Platform").  *Id.* ¶ 1.  Ms. Hillmer was responsible for overseeing assessments, authorizations, and continuous monitoring of the Platform.  *Id.* ¶ 2.

The Federal Risk and Authorization Management Program ("FedRAMP") is a government program that imposes security requirements for cloud services used by the federal government based on the sensitivity and importance of the information used by the system.  *Id.* ¶¶ 6, 9.  There are three "risk impact levels" under FedRAMP: Low, Moderate, and High.  *Id.* ¶ 9.  To hold federal

information, cloud service providers must obtain authorization under FedRAMP at the relevant risk impact level and "demonstrate continuous compliance with FedRAMP security requirements, called 'security controls,' through mandatory monitoring, reporting, and assessments." *Id.* FedRAMP requires an approved third-party assessment organization (a federal auditor) to assess a cloud service provider's implementation of security controls at three stages in the authorization process. *Id.* ¶ 11. Additionally, the Department of Defense ("DoD") has a separate authorization process and approval requirements for cloud services sold to the DoD, with six impact levels ("ILs") depending on the sensitivity of the data to be hosted. *Id.* ¶¶ 14-16.

Around November 2018, the U.S. Army awarded a five-year contract to Company A for a cloud-based payroll, pension, and benefits system called "NIFMS." *Id.* ¶ 17. The contract required Company A to obtain a DoD IL4 provisional authorization and maintain various security controls. *Id.* ¶ 18. The indictment alleges that from around March 2020 to November 2021, Ms. Hillmer made, and aided and abetted the making of, materially false and misleading representations to fraudulently obtain and maintain a FedRAMP High authorization, to fraudulently induce the Army to award task orders to Company A and sponsor the Platform for a DoD IL4 provisional authorization, and to conceal the true state of the Platform from assessors, authorizing officials, and government customers. *Id.* ¶¶ 19-42.

## II.    PROCEDURAL HISTORY

Ms. Hillmer was charged by indictment on December 9, 2025 with two counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2(a); one count of major fraud, in violation of 18 U.S.C. §§ 1031 and 2(a); and two counts of obstruction of a federal audit, in violation of 18 U.S.C. §§ 1516 and 2(a). ECF No. 1 ¶¶ 44-53. Later that month, she sought an extension of

2

time to file a motion for a bill of particulars, ECF No. 14, which the court granted, *see* Dec. 24, 2025 Minute Order.

On February 3, 2026, Ms. Hillmer sent the United States a request for a bill of particulars, asking the government to identify (1) "each 'false and misleading representation' or 'information' Ms. Hillmer is alleged to have made over the 20-month charged period," ECF No. 18-4, at 2; (2) each false representation Ms. Hillmer is alleged to have "aided and abetted and caused . . . to be made," *id.* at 4 (internal quotation marks omitted); (3) "each act of concealment Ms. Hillmer is alleged to have committed," *id.* at 6; and (4) "the individuals and entities alleged to have participated in the charged conduct," *id.* at 7.  The government declined to provide the requested bill of particulars but, "in the interest of narrowing any disputes and facilitating efficient pretrial preparation," responded with a letter voluntarily disclosing certain information.  ECF No. 21-2, at 1.  Ms. Hillmer filed a motion for a bill of particulars on February 27, 2026.  ECF No. 18.  The matter is fully briefed, ECF Nos. 18, 20, 20-1, 20-2, 20-3, 21, 25, 26, and the court heard argument on the motion on April 29, 2026, *see* Apr. 29, 2026 Minute Entry.

### III.    LEGAL STANDARD

A criminal indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the crime charged."  Fed. R. Crim. P. 7(c)(1).  When the offenses are not "stated with enough precision" to allow the defendant to understand the charges against her and prepare a defense in advance of trial, she may seek a bill of particulars under Federal Rule of Criminal Procedure 7(f).  *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).  In determining whether to grant a motion for a bill of particulars, the court "must strike a 'prudent balance' between the legitimate interests of the government and the defendant."  *United States v. Manafort*, No. 17-CR-201, 2018 WL 10394893, at *1 (D.D.C. June 12, 2018) (quoting *United*

*States v. MacFarlane*, 759 F. Supp. 1163, 1169 (W.D. Pa. 1991)).  The court must weigh "the complexity of the crime charged, the clarity of the indictment, and the degree of discovery and other sources of information that are available to the defense."  *United States v. Connell*, No. 21-CR-84, 2023 WL 4286191, at *2 (D.D.C. June 30, 2023) (quoting 1 Charles Alan Wright et al., *Federal Practice and Procedure* § 130 (5th ed. 2023)).  "[I]t is within the discretion of the trial court to determine whether a bill of particulars should be provided, and the court should grant a motion for a bill of particulars to the extent it believes it is *necessary* to allow the defendant[] to adequately prepare for and avoid surprise at trial."  *United States v. Sutton*, No. 21-CR-598, 2022 WL 1183797, at *2 (D.D.C. Apr. 21, 2022) (quoting *United States v. Bazezew*, 783 F. Supp. 2d 160, 167 (D.D.C. 2011)).

A bill of particulars is not required "if the indictment is sufficiently specific[] or if the requested information is available in some other form."  *Butler*, 822 F.2d at 1193; *see United States v. Young*, No. 23-CR-241, 2024 WL 2891620, at *2 (D.D.C. June 10, 2024) (explaining that "a bill of particulars is unnecessary if the information the defendant seeks is readily available through alternate means such as discovery" (quoting *United States v. Vaughn*, 722 F.3d 918, 927-28 (7th Cir. 2013))).  A defendant may not use a bill of particulars "as a discovery tool or a device to preview the government's evidence or theory of the case."  *Connell*, 2023 WL 4286191, at *2; *see United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017) ("A bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case.").

## IV.  DISCUSSION

In her motion for a bill of particulars, Ms. Hillmer seeks particulars "detailing the content of [her] allegedly false representations, who made the representations, how they were false, and

approximately when they were made," ECF No. 18-1, at 9, and identifying the individuals and entities alleged to have been involved in the charged scheme, "including unindicted co-conspirators," ECF No. 18, at 8; *see* ECF No. 18, at 1-8.    Ms. Hillmer argues that the "indictment's lack of specificity as to the statements and security controls at issue makes it nearly impossible for [her] to prepare a meaningful defense."  ECF No. 18-1, at 2.  The United States counters that the indictment provides "ample notice of the charges," that its disclosure letter and discovery "have already supplied the specific information [Ms. Hillmer] claims to need," and that her remaining requests improperly seek trial proof.  ECF No. 21, at 1.  While Ms. Hillmer's motion contains thirty-eight different requests for particulars, *see* ECF No. 18, at 1-8, Ms. Hillmer clarified at the hearing that she seeks a "list of the false statements" she is alleged to have made or caused to be made and the identities of the persons who allegedly made false statements at her direction, ECF No. 40, at 5:22; *see id.* at 11:08-11:13.  The court concludes that the indictment, the government's voluntary disclosure letter, and the information provided in discovery sufficiently apprise Ms. Hillmer of the nature of the charges against her and of her alleged misrepresentations.  Accordingly, a bill of particulars is not "*necessary* to allow [Ms. Hillmer] to adequately prepare for and avoid surprise at trial."  *Sutton*, 2022 WL 1183797, at *2 (quoting *Bazezew*, 783 F. Supp. 2d at 167).

First, the indictment and United States' voluntary disclosure letter adequately inform Ms. Hillmer of the allegations underlying each count.  For the wire fraud counts (Counts One and Two), the indictment states that Ms. Hillmer used interstate wires to submit the December 2020 and May 2021 FedRAMP assessment and authorization materials.  ECF No. 1 ¶¶ 44-46.  In its disclosure letter, the government provided an index of key documents identifying the relevant documents supporting the allegations.  *See* ECF No. 21-2, at 11-12.  And the government's

disclosure letter further explains that the allegedly false statements contained in the materials include misrepresentations regarding the implementation of security controls contained in FedRAMP High System Security Plans—which falsely described the Platform as having security controls such as multi-factor authentication, automated account management, continuous monitoring, and incident response capabilities as "fully implemented"—as well as in the DoD IL5 Addendum, Security Assessment Reports, and Readiness Assessment Reports.  *Id.* at 4.  The government's disclosure letter also specifies that 2020 and 2021 assessments misrepresented the implementation of other controls, including audit and accountability controls and access control protections.  *Id.*

Similarly, for the major fraud count (Count Three), the indictment alleges that from approximately March 2020 to November 2021, Ms. Hillmer executed a scheme to defraud the United States in connection with the NIFMS contract.  ECF No. 1 ¶¶ 47-49.  The indictment describes in detail the manner in which Ms. Hillmer allegedly executed this scheme, including through the March 2020 submission of a Significant Change Request misrepresenting the implementation of more than one hundred security controls, *id.* ¶¶ 28, 30; the July 2020 submission of a FedRAMP High Readiness Assessment Report, *id.* ¶ 31; another Significant Change Request misrepresenting the implementation of FedRAMP High controls, *id.* ¶ 33; the January 2021 service level agreement, *id.* ¶ 35; the December 2020 and May 2021 submissions of the Platform's System Security Plans, Security Assessment Reports, and other documents, *id.* ¶¶ 34, 36-37; and various presentations emailed to assessors and Army officials in August and September 2021 misrepresenting the Platform's technical capabilities, *id.* ¶ 42.  The indictment also specifies how Employee 2 allegedly gave Ms. Hillmer repeated warnings that the Platform was not compliant with security requirements and that an outside firm allegedly warned

6

Ms. Hillmer that more than one hundred security controls and readiness requirements had not been properly implemented. *Id.* ¶¶ 29-30. Moreover, the government's disclosure letter further explains that, among other things, Ms. Hillmer's allegedly misleading presentations used old diagrams of the Platform's architecture, which falsely represented that the Platform had maintained various technologies in its 2021 assessment. ECF No. 21-2, at 5, 6. And the government's letter additionally contained an index of key documents specifying the materials supporting these allegations. *See* ECF No. 21-2, at 11-12.

Finally, the obstruction of a federal audit counts (Counts Four and Five) charge Ms. Hillmer with making—and aiding and abetting the making of—misrepresentations in connection with the 2020 and 2021 FedRAMP and DoD assessments of the Platform. ECF No. 1 ¶¶ 50-53. The government's disclosure letter again identifies the documents containing the allegedly false and misleading representations for both assessments. *See* ECF No. 21-2, at 7-8. What is more, the government has identified the entities and individuals mentioned in the indictment, including employees allegedly involved in the charged scheme, and produced more than thirty reports of witness interviews. *See id.* at 9. Taken together, these disclosures provide Ms. Hillmer with an "explicit roadmap" of the fraudulent representations underlying the charges, rendering a bill of particulars unnecessary. *United States v. Saffarinia*, 422 F. Supp. 3d 269, 273 (D.D.C. 2019).[1]

---

[1] Ms. Hillmer also engaged in at least two pre-indictment reverse proffer sessions with the government, during which she received information about the evidence against her. *See* ECF No. 21, at 7. The parties heavily dispute whether those reverse proffers addressed the issues raised in Ms. Hillmer's motion. *See* ECF No. 21, at 6-7 (arguing that the government "had an open dialogue for over a year prior to her indictment during which the government was very transparent about its theories of the defendant's culpability and the key evidence incriminating her"); ECF No. 23, at 6-7 (arguing that the government presented an outdated theory of its case during the

(*continued on next page*)

Ms. Hillmer nevertheless seeks identification of each security control that was allegedly misrepresented to assessors during the twenty-month charged scheme.  *See, e.g.*, ECF No. 40, at 11:22-13:08.  But the government has already identified five specific control families that the false representations charged in the indictment pertain to:

> (a) identification and authentication (IA), including enterprise deployment of hardware-token multi-factor authentication (Yubikeys); (b) access control (AC), including automated account provisioning and privilege management; (c) audit and accountability (AU), including centralized log collection and aggregation; (d) system and information integrity (SI), including continuous monitoring and realtime alerting; and (e) incident response (IR).

ECF No. 21-2, at 3.  While Ms. Hillmer counters that the government has not committed to relying *solely* on these five control families and that those five families comprise around sixty-seven controls, *see* ECF No. 23, at 3, requiring the government to identify each and every security control that it might rely on at trial would be akin to ordering a "preview [of] the government's evidence or theory of the case," *Connell*, 2023 WL 4286191, at *2; *see United States v. Nordean*, No. 21-CR-175, 2022 WL 17583799, at *20 (D.D.C. Dec. 11, 2022) (denying a motion for a bill of particulars where the defendant's request was "better understood as seeking the Government's legal theories and proof").  Moreover, the government represents that it has identified "the full universe of potential security controls . . . that were not implemented" based on documents provided in discovery, including an outside firm's report identifying noncompliant security controls and internal spreadsheets that Company A used to track whether security controls had

---

proffers and that the parties' pre-indictment discussions "did not—and could not—address the targeted factual deficiencies identified in Ms. Hillmer's bill of particular that stem from the text of the indictment").  Given the lack of information before the court regarding the contents of these pre-indictment discussions, the court declines to rely on the reverse proffers in determining whether a bill of particulars is warranted.

been implemented.  ECF No. 40, at 26:04-26:11; *see* ECF No. 21-2, at 5 ("The 'more than 100 security controls and DoD general readiness requirements' that were not implemented were identified by Kratos.  The specific controls and requirements are documented in the firm's communications and work product, which have been produced in discovery."); *see also United States v. Ghavami*, No. 10-CR-1217, 2012 WL 2878126, at *4 (S.D.N.Y. July 13, 2012) (denying a request for particulars of allegedly fraudulent misrepresentations where the government had "identified the universe of transactions that form[ed] the basis for the charges"), *aff'd sub nom.*, *United States v. Heinz*, 790 F.3d 365 (2d Cir. 2015).  This case is thus distinguishable from Ms. Hillmer's primary authorities, *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998), and *United States v. Anderson*, 441 F. Supp. 2d 15 (D.D.C. 2006).  *See* ECF No. 18-1, at 8-9; ECF No. 23, at 11-12.  The indictments in those cases did not identify *any* document or specific statement containing alleged misrepresentations by the defendants, *see Trie*, 21 F. Supp. 2d at 21-22; *Anderson*, 441 F. Supp. 2d at 19-20, and *Trie* specifically dealt with a "particularly enigmatic" indictment that attributed forty-five pages of false statements to 175 different people, 21 F. Supp. 2d at 21.  Here, by contrast, the information provided by the government in the indictment, supplemented by the government's voluntary disclosure letter and discovery, is more than sufficient to allow Ms. Hillmer to understand the charges she faces and to prepare a defense.

The court acknowledges that discovery in this case is voluminous.  *See* ECF No. 40, at 4:22 (stating that the government has provided more than seventeen million pages of discovery).  But this is not a case in which the government argues that discovery is a substitute for an adequate indictment, *see Anderson*, 441 F. Supp. 2d at 19 (noting that "it is not a sufficient response to a motion for a bill of particulars to point to the voluminous discovery already provided"), or in which the government has dumped a huge amount of discovery on the defendant without providing any

meaningful guidance about what is most relevant.  Rather, as explained above, the government has charged Ms. Hillmer with making false representations about the Platform's implementation of various security controls, and it has identified specific documents and security controls that support those allegations.  The court thus concludes that Ms. Hillmer's interest in obtaining more granular information about the charges against her is outweighed by "the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial."  *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012).  And, to the extent there remains any risk of unfair surprise to Ms. Hillmer based on the volume of discovery, early disclosure of the government's trial exhibits sufficiently mitigates that risk.  ECF No. 40, at 31:03-31:19 (indicating that the government is "amenable" to earlier deadlines for exhibits); *see, e.g.*, *United States v. Wey*, No. 15-CR-611, 2017 WL 237651, at *22 (S.D.N.Y. Jan. 18, 2017) (declining to order disclosure of particulars but requiring earlier disclosure of government's trial exhibits).

## V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Ms. Hillmer's Motion for a Bill of Particulars, ECF No. 18, is **DENIED**.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   June 17, 2026